FILED

2001 JUN 20  PM 3: 19

LANCE S. WILSON
CLERK

_____ DEPUTY

1

2

HOWARD ZLOTNICK
United States Attorney
District of Nevada
CRAIG S. DENNEY
Assistant United States Attorney
100 West Liberty Street, Suite 600
Reno, Nevada  89501
(775) 784-5438

3

CR-N-01-0105-HDM-VPC

4

5

6

UNITED STATES DISTRICT COURT

7

DISTRICT OF NEVADA

8

9

UNITED STATES OF AMERICA,

Plaintiff,

10

11

12

13

v.

MELVIN AARON BISHOP,
MEL BISHOP ENTERPRISES, INC.,
RICHARD D. FILIPPI,

14

15

16

Defendants.

17

18

19

20

21

22

23

24

25

26

No.

INDICTMENT FOR VIOLATIONS OF:

TITLE 18, UNITED STATES CODE,
SECTION 371 - Criminal Conspiracy
(Count One)

TITLE 18, UNITED STATES CODE,
SECTION 545 - Smuggling Goods
Into the United States
(Count Two)

TITLE 18, UNITED STATES CODE,
SECTION 542 - Entry of Goods by Means
of False Statements
(Count Three)

TITLE 18, UNITED STATES CODE,
SECTIONS 922(l) and 924(a)(1)(C) -
Unlawful Importation of Firearms
(Counts Four through Ten)

TITLE 18, UNITED STATES CODE,
SECTION 548 - Removing Goods from
Warehouse
(Count Eleven)

TITLE 18, UNITED STATES CODE,
SECTION 549 - Removing Goods from
Customs Custody: Breaking Seals
(Count Twelve)

TITLE 18, UNITED STATES CODE,
SECTIONS 922(o)(1) AND
924(a)(2) - Unlawful Possession Of A
Machinegun
(Counts Thirteen through Fifteen)

TITLE 18, UNITED STATES CODE,
SECTION 982 - Criminal Forfeiture
(Count Sixteen)

TITLE 18, UNITED STATES CODE,
SECTION 924(d)(1) - Criminal Forfeiture of
Firearms
(Count Seventeen)

TITLE 18, UNITED STATES CODE,
SECTION 2 - Aiding and Abetting
(Counts One through Twelve)

THE GRAND JURY CHARGES:

COUNT ONE
TITLE 18, UNITED STATES CODE, SECTIONS 371 and 2
Criminal Conspiracy; Aiding and Abetting

1. At all times material to the allegations contained in this Indictment:

a. **MELVIN AARON BISHOP** (hereinafter "BISHOP") was a Nevada businessman engaged in the legal importation of firearms parts and illegal importation and distribution of firearms from Canada for subsequent sale in the United States. BISHOP would purchase firearms (particularly, M1 Garand semi-automatic rifle receivers) in large quantities for approximately $4.50 to $13.60 each from Century International Arms (hereinafter "Century") and Lever Arms (hereinafter "Lever"), which are Canadian firearm dealers. BISHOP and his co-conspirators would direct Century and Lever to transfer the purchased firearms to BISHOP's company in Canada, MBE, Inc. (hereinafter "MBE (Canada)"), located at 639 Queen Street West, Toronto, Ontario, Canada, for subsequent shipping and unlawful importation into the United States. BISHOP would then receive and store the firearms at his home business in Reno, Nevada. BISHOP would later sell the M1 Garand receivers to customers (including other gun dealers) throughout the United States for prices ranging from $125.00 to $150.00 per M1 receiver. As a gun dealer in Nevada, BISHOP possessed a federal firearms license (FFL). However, BISHOP had no authorization to import firearms or receivers from outside the United States. BISHOP's firearms permit (known as "ATF Form 6") from the Bureau of Alcohol, Tobacco, and Firearms (ATF) explicitly states "no firearms or receivers".

2

b. **MEL BISHOP ENTERPRISES INC.** (hereinafter "MBE (Reno)") was a firearms business owned and operated by BISHOP out of his home at 220 Piney Creek Road, Reno, Nevada. MBE (Reno) is a Nevada corporation that advertises in gun magazines and on the Internet. MBE (Reno) sells and ships firearms to customers throughout the United States.

c. **RICHARD D. FILIPPI** (hereinafter "FILIPPI") was a Nevada resident employed by BISHOP at MBE and also a manager at the Delta Cargo Facility at the Reno-Tahoe International Airport in Reno, Nevada. FILIPPI was employed by Transair Services which contracts with Delta and Continental Airlines to run their cargo facility in Reno and act as their agent. During the time period of the conspiracy, FILIPPI would substitute boxes of junk surplus truck and machine parts for the boxes containing illegally imported M1 Garand receivers. These junk truck and machine parts were packed in identical cardboard boxes as the boxes containing the M1 Garand receivers. The substitution of boxes was conducted prior to U.S. Customs inspecting the merchandise. FILIPPI would also falsify shipping documents to mislead and deceive U.S. Customs inspectors (who clear shipments) as to the contents of the boxes in the Delta Cargo Facility. FILIPPI would also remove the boxes of M1 Garand receivers from a locked bonded U.S. Customs merchandise cage and the Delta Cargo facility. FILIPPI would then deliver the boxes of illegally imported M1 Garand receivers to BISHOP's home and business, MBE (Reno), located at 220 Piney Creek Road, Reno, Nevada.

d. **IRA D. MEITEEN** (hereinafter "MEITEEN") was a Canadian resident who operated two Canadian companies, Merchandise Mart of Canada Limited (hereinafter "Merchandise Mart") and King Sol Outdoor Outfitters Enterprises (hereinafter "King Sol"), both located at 639 Queen Street, West Toronto, Ontario, Canada, to package and ship firearms and firearms parts in boxes labeled as "truck parts" (and other fictitious descriptions) for shipment from Canada to BISHOP's home business in Reno, Nevada. MEITEEN's companies shared their business address with BISHOP's company MBE (Canada).

e. The **M1 GARAND** is a .30 caliber semi-automatic rifle manufactured for the U.S. military in World War II and Vietnam. Large quantities of the M1 Garand receivers and

3

1 rifles are located in Canada and overseas in other countries.  Pursuant to Title 27, Code of Federal

2 Regulations, § 178.11, the M1 Garand receiver is defined as that "part of a firearm which provides

3 housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded

4 at its forward portion to receive the barrel."

5   2.  Beginning on or about November 1, 1997, and continuing up to and including on

6 or about April 18, 2000, in the District of Nevada, and elsewhere,

7       **MELVIN AARON BISHOP,**

8      **MBE ENTERPRISES INC., and**

9       **RICHARD D. FILIPPI,**

10 defendants herein, and others known and unknown to the Grand Jury, did willfully and knowingly

11 combine, conspire, confederate and agree with each other to commit the following offenses against

12 the United States:

13   a.  To enter and introduce, and attempt to enter and introduce, imported

14 merchandise by means of false statements, without reasonable cause to believe the truth of such

15 statements, as to any material matter, in violation of Title 18, United States Code, Sections 542

16 and 2.

17   b.  To knowingly and fraudulently import and cause to be imported into the United

18 States certain merchandise, to wit, approximately 6,402 M1 Garand firearm receivers and 100 rifle

19 barrels, contrary to law, in violation of Title 18, United States Code, Sections 545 and 2.

20   c.  Without being licensed importers, licensed manufacturers, or licensed dealers, to

21 engage in the business of importing firearms, and in the course of such business, shipping,

22 transporting, and receiving firearms in interstate and foreign commerce, in violation of Title 18,

23 United States Code, Section 922(l) and 2.

24   d.  To fraudulently remove shipments of M1 Garand receivers and rifle barrels from

25 a bonded warehouse at the Reno-Tahoe International Airport in Nevada, and fraudulently present

26 to the U.S. Customs Inspector a false manifest, entries, and supporting documents relating to the

withdrawal of said merchandise, on which the defendants fraudulently marked the contents of the

1 | cartons as "truck parts" or other fictitious contents, in violation of Title 18, United States Code,

2 | Sections 548 and 2.

3 |      e. To unlawfully and willfully break customs seals and remove merchandise from a

4 | bonded warehouse at the Reno-Tahoe International Airport in Nevada, to wit: cartons containing

5 | M1 Garand receivers and rifle barrels marked as "machine and truck parts" in violation of Title 18,

6 | United States Code, Sections 549 and 2.

7 |      3. In furtherance of the conspiracy, and to attain the ends thereof, the defendants

8 | committed the following overt acts, among others, in the District of Nevada and elsewhere:

9 |      (1) On or about November 18, 1997, BISHOP acquisitioned 2,186 M1

10 | Garand rifle receivers from Century Arms $13.60 each for a total purchase price of $29,729.60.

11 | The receivers were shipped to Merchandise Mart in Toronto, Ontario, Canada, at which time they

12 | were unpacked and repackaged in shipping cartons by Ira MEITEEN. MEITEEN received

13 | compensation in the amount of $3,402.60 for his services.

14 |      (2) Once the M1 Garand receivers arrived at Merchandise Mart, MEITEEN

15 | and BISHOP contacted an individual known as Albert Ezerzer (hereinafter "Ezerzer"). Ezerzer

16 | signed the acquisition books indicating that he had in fact purchased the receivers from

17 | Merchandise Mart. Ezerzer is the owner of a Canadian company called Limousine Connection

18 | and met BISHOP in approximately 1992.

19 |      (3) To support this activity, BISHOP and Ezerzer formed a company known

20 | as A & M Enterprises (hereinafter "A & M"), located at 1930 Yonge Street, Suite 1114, Toronto,

21 | Ontario. This fictitious name stands for Albert & Mel Enterprises. This company was formed

22 | solely for the purpose of facilitating the transfer of firearms. Ezerzer is an firearms acquisition

23 | certificate (FAC) holder in Canada.

24 |      (4) After signing for the receivers, Ezerzer in turn "sold" the receivers to

25 | MBE (Reno). For completing the transaction, BISHOP paid Ezerzer approximately $1.00 per

26 | receiver.

(5) On November 28, 1997, BISHOP sent an email to a friend in Canada advising him that he purchased 2,186 units from Century Arms.

(6) On or about December 31, 1997, FILIPPI conspired with BISHOP to illegally transport M1 receivers from Canada into the United States utilizing Delta Air Cargo as the conduit. In a memo on December 31,1997, FILIPPI advises BISHOP of a proposal involving a cash payment in exchange for assisting with the shipment of receivers. This letter was found when U.S. Customs forensics was conducted on the computers located at the Delta Cargo Facility.

(7) On January 11, 1998, BISHOP advises Ezerzer, via email, that he should deliver the boxes to Delta Air Cargo on the 13th of January and that the routing for the shipment should be Toronto-Atlanta-Salt Lake-Reno. In addition, BISHOP advises Ezerzer to accompany the "little things" to Reno.

(8) On January 16, 1998, Ezerzer emails a Bill of Sale to BISHOP for the sale of 2,196 M1 Garand receivers for a total price of $2,196 in Canadian dollars. Ezerzer later advised law enforcement authorities that BISHOP paid him $1.00 per M1 receiver. On January 17, 1998, BISHOP, via email, acknowledged receipt of the Bill of Sale. On January 18, 1998 BISHOP advised Ezerzer, via email, to use an address that is not traceable like a box or a rural route.

**MBE (Reno) Receiver Shipment from Canada Clears U.S. Customs on January 21, 1998**:

(9) On January 19, 1998, A & M Enterprises, Canada, shipped 3,630 lbs. of "goods" declared as "Machined parts, tooling, metal clips and hardware" via Delta Cargo to MBE in Reno, Nevada. This shipment was transported to Delta Cargo in Canada, by Ezerzer. On January 21, 1998, Nev-Cal, a Customs Broker located in Reno, cleared the shipment through the US Customs Service on behalf of BISHOP.

(10) On January 27, 1998, FILIPPI created several documents in furtherance of the conspiracy. FILIPPI prepared a price list for the incoming receivers and an order form for the bulk sale of receivers with BISHOP's business address annotated at the top of the form).

6

(11) On February 18, 1998, BISHOP purchased 4,904 M1 receivers from Century Arms for a total price of $49,040.00. These M1 receivers were transferred from Century to Merchandise Mart and then to Ezerzer. Albert Ezerzer again "sold" the receivers to MBE. The transfer of these receivers from Canada to Reno, Nevada, was made in four separate shipments from A & M Enterprises to BISHOP in Reno. On each occasion, Ezerzer delivered the goods to Delta, Canada, and on each occasion, the goods were falsely declared and cleared through US Customs by the broker Nev-Cal.

(12) On February 21, 1998, BISHOP emailed and advises Ezerzer, "We had a meeting w/ The Receiver boys and decided to draw only 1,500 or max. 2000... period and a rumor is that Century may close the Montreal operation..."

(13) On April 13, 1998, Rick FILIPPI advised Nev-Cal of the four shipments which are forthcoming. The first of the four shipments was cleared through U.S. Customs on April 17, 1998. The original air waybill (AWB) indicated that the goods were declared as "Machine Bolts and Hardwares of U.S. Mfg..." Nev-Cal filed the entry for 850 lbs. of "Used Bolts-- Hardware." The shipper is reflected as A & M Enterprises and the consignee is MBE (Reno).

(14) On April 21, 1998, Nev-Cal cleared the second shipment through U.S. Customs for 770 lbs. of "Machine Bolts and Hardwares..." The shipper is reflected as A & M Enterprises and the consignee is MBE (Reno).

(15) On April 23, 1998, Nev-Cal cleared the third shipment through U.S. Customs for 770 lbs. of "US Goods Returned as Trade Magazines and Journals. The shipper is reflected as A & M Enterprises and the consignee is MBE, Reno. Initial invoices and paperwork provided to Delta Airlines reflect the goods as "Nuts, Bolts and Hardwares."

(16) On April 23, 1998, Nev-Cal cleared the fourth shipment through U.S. Customs for 770 lbs. of "US Goods Returned as Trade Magazines and Journals." The shipper is reflected as A & M Enterprises and the consignee is MBE, Reno. Initial invoices and paperwork

7

1   provided to Delta Airlines reflect the goods as "Nuts, Bolts and Hardwares" and "Trade

2   Journals/Publications."

3           (17) On January 9, 1999, FILIPPI prepared a letter to the Nevada Air

4   National Guard stating that he wishes to have a leave of absence or discharge so that he can "go to

5   Toronto Canada to oversee the dismantling and shipping of goods that my business has

6   purchased."

7           (18) On January 21, 1999, BISHOP wrote a letter to FILIPPI's commander,

8   Lieutenant Colonel Lenny Rose, at the Air National Guard advising that FILIPPI is to depart for

9   Toronto, Canada, on February 8, 1999, to "supervise the acquisition and disassembly of goods for

10   our company."

11   **MBE (Reno) Receiver Shipment from Canada Clears U.S. Customs on May 5, 1999**:

12           (19) On May 5, 1999, U.S. Customs cleared 600 lbs. of Beretta parts/Breda

13   parts sent from Lever Arms, Canada to MBE (Reno).  Both the Pro Forma Invoice and the "ATF

14   Form 6" paperwork that accompany the shipment have been fraudulently altered.   The altered

15   ATF permit stamp falsely authorizes importation of firearms receivers into the United States.  The

16   attachment to the ATF Form 6 has the word "Reciever" inserted and misspelled under the

17   description of Beretta parts/Breda Parts.

18           (20) From May 15 to May 31, 1999, BISHOP sends out emails to various

19   customers advising them that he will be getting M1 receivers in June 1999.

20           (21) In May 1999, investigators from the Canadian Special Investigations

21   Services Area/Provincial Firearms Unit, received information regarding the acquisition of large

22   quantities of M1 Garand rifles.  Michael Press, a Senior Provincial Firearms Officer for Canada,

23   learns that a transfer of 1,100 M1 Garand rifles was being conducted in an alleged unlawful

24   manner.  The transfer of 1,100 M1 Garand Rifles was made by Century Arms to BISHOP through

25   Merchandise Mart operating as King Sol.  Officer Press made an inspection of Merchandise Mart

26   and located 1,100 M1 Garand receivers stored in an insecure manner.

(22) Officer Press' inspection also revealed that the 1,100 M1 receivers were not recorded on the acquisition books of Merchandise Mart which is in violation of the Firearms Act in Canada.   Officer Press interviewed MEITEEN who claims there was confusion because MEITEEN believed he had permission from the Canadian Firearm Office's inspection unit not to record this information because MEITEEN was just facilitating the movement of the arms between Century Arms and MBE (Canada).  Officer Press advised MEITEEN that he is in violation of Canadian firearms laws.

(23) MEITEEN further claimed to Canadian law enforcement that he believed his activities were not illegal because the firearms were being transferred to MBE (Canada) for the purpose of export to MBE (Reno) in the United States.  MEITEEN further stated that upon receipt by MBE (Reno), the M1 receivers would be restored to functioning firearms for sale in the United States by MBE (Reno).

(24) Canadian law enforcement investigation revealed that BISHOP did not possess a business license for selling firearms in Canada and only possessed a firearms acquisition license.  Officer Press cautioned MEITEEN in regards to the proper recording of all firearms per the requirements of the Canadian Firearms Act.  MEITEEN was also warned by Officer Press to discontinue any future business with MBE (Canada) until MBE obtained a firearms dealer's license in Canada.  The Canadians allowed the transfer to occur, and the firearms were registered through the Canadian Firearms Registry to BISHOP.

**MBE (Reno) Receiver Shipment from Canada Clears U.S. Customs on June 29, 1999:**

(25) On June 11 and June 19, 1999, BISHOP sends two different emails to two different customers stating that he should have receivers by the end of June.

(26) On June 29, 1999, MBE (Reno), received 600 lbs. of "firearm parts" from Lever Arms, Canada.  This shipment was cleared through U.S. Customs with a total value of $5000.

(27) Similar to the May 5, 1999 shipment, both the Pro Forma Invoice and the "ATF Form 6" paperwork that accompany the June 29, 1999, shipment have been fraudulently

altered.  The altered ATF permit stamp falsely authorizes importation of firearms receivers into the United States.  The attachment to the ATF Form 6 has the word "Reciever" inserted and misspelled under the description of Beretta parts/Breda Parts.

**MBE (Reno) Receiver Shipment from Canada Never Clears U.S. Customs in August 1999**:

(28) On August 5, 1999, MEITEEN advises BISHOP via email that the "stock is out today - - arrives in Reno tomorrow – Enjoy!".

(29) Queries conducted with U.S. Customs Service, Reno, determined that no entry was filed for the shipment arriving on or about August 6, 1999, although Nev-Cal has provided paperwork to US Customs Service, which includes a Lever Arms invoice, made out to MBE (Reno) for "gun parts." The Lever Arms invoice, dated August 5, 1999, is consistent with MEITEEN's email.  The total value of the shipment is $10,000.

(30) Nev-Cal further advised that the reason they are in possession of this paperwork is because initially they were instructed by FILIPPI/BISHOP to clear the goods but then they received additional instructions that Border Brokers, a Customs broker located in Blaine, Washington, was going to clear the shipment.  According to the Border Brokers, they did not clear the shipment, and the shipment status is unknown. Similar to the May 5, 1999, and June 29, 1999, shipments, both the Pro Forma Invoice and the ATF form 6 paperwork have been fraudulently altered.  The altered ATF permit shows a false authorization to import firearm receivers into the United States.

(31) Roadway Express/Reimer Trucking confirmed to U.S. Customs that the above shipment had been transported to the company's Portland, Oregon, facility.  On August 25, 1999, Lever Arms issued a "stop and return" authorization and the shipment was returned to Lever Arms in Canada without explanation.

(32) On September 1, 1999, BISHOP was interviewed by Canadian Firearms Officer Michael Press and other investigators.  BISHOP claimed he was acting within the law that governed his firearms acquisition certificate (FAC).  BISHOP advised the Canadians that he was exporting these firearms to the U.S. for restoration and sale within the United States.

10

BISHOP further advised that he purchased restoration kits from Lever Arms to facilitate the restoration of these firearms.

(33) BISHOP also advised the Canadian officers that in April 1998, he acquired 2,185 Ml Garand receivers, which he purchased from Albert Ezerzer. BISHOP advised that these firearms were then shipped to his place of business in Reno, Nevada.

(34) Officer Press cautioned BISHOP that this activity was illegal because in April 1998, BISHOP did not even possess a Canadian FAC. Officer Press further advised BISHOP that any such acquisition of firearms would require him to possess a Canadian Firearms Business License.

(35) Further investigation by Officer Press determined the series of transfers of the 2,185 M1 Garand receivers. The firearms were acquired in April 1998 by Merchandise Mart from Century Arms, Canada. The M1 receivers were then transferred to Ezerzer who then transferred the receivers to BISHOP in Reno, Nevada.

(36) Investigation of Ezerzer revealed that he is a holder of a FAC, but not a holder of a business license. Canadian Detective John Frisch interviewed Ezerzer who admitted that he was paid one dollar per receiver to transfer them through his name and F.A.C. Ezerzer received payment from BISHOP. Ezerzer also advised he did not take physical possession of the receivers.

(37) On October 30, 1999, BISHOP emails customer George Liakos that he "found 2300 units [receivers]... just can't move them into the USA..." Later on the same day BISHOP emails Liakos and advises him that he has 20,844 M1 Garand receivers and "of course they cannot come to the USA yet.. but w/ proper legislation should not be too long..."

(38) On November 1, 1999, BISHOP emails customer Michael Hunt and advises that he has made arrangements to obtain 725 Garand and 20,844 receivers from Century.

(39) On November 9, 1999, FILIPPI prepares a letter to his employer, Transair Services, and advises that he is resigning from his position as station manager. FILIPPI

requests the resignation be effective December 20, 1999, and that he will stay available as a part time cargo agent.

(40) On November 25, 1999, BISHOP emails MEITEEN and advises that "we soon are going to have to buy the receivers and have them shipped." BISHOP states that "Tony Tornyi from (Century) will let us know when... in the mean time, the market is ready and fat for the sale of these..."

(41) On November 26, 1999, BISHOP emails customers and advises that he has no receivers until early January 2000. BISHOP states that he has approximately 800 receivers due in.

(42) On November 28, 1999, BISHOP emails customer and advises that his company is "now revising the plan to mid-January as the ATF is holding us up."

(43) On December 4, 1999, BISHOP emails John Robertson, Lever Arms employee, and states "Well you better tell me the plan...or Richmond flies South w/ the goods...I still say he speaks big, but no permit and the Feds are watching..."

(44) On December 5, 1999, BISHOP emails customer and advised that "no receivers at present. Some will be in January 2000..."

(45) On December 10, 1999, BISHOP emails Tom Byrne, gun dealer on East Coast, and advises: "I have not bothered you while making very expensive decisions for us both.. you now are broke w/ the possibility of becoming very wealthy...we will be obtaining the last of the U.S. Garand rifles from Century and Alan Lever [of Lever Arms] real soon..."

(46) On December 10, 1999, BISHOP sends a fax to MEITEEN boasting that he has a permit number to import various parts and items that will satisfy Customs. BISHOP states that "I would like to ship Dec. 28, 29, 30th to my shop..."

(47) On December 12, 1999, BISHOP emails MEITEEN and advises: "The paper I sent to you is the semi final paper giving me the import permit to the U.S... there is still the State Dept. paper allowing me to ship from business to business... I should receive some of this later... but for now, the permit should be sufficient to show Randy Hoy and the Customs guy if

12

nec... if he sees this he will pass anything thru w/ the numbers and Rick [FILIPPI] will send you a Delta manifest to cover contents of shipment..."

(48) On December 12, 1999, MEITEEN emails and advises BISHOP that Alan Lever (Lever Arms) is "doing the paperwork for 800 pieces."

(49) On December 12, 1999, BISHOP emails and advises MEITEEN about Alan Lever: "let him do what ever and ship... we'll transfer later (Exhibit 11-7).

(50) On December 21, 1999, BISHOP emails and advises Tom Byrne that "I can't even tell you it's time for the money and Alan [Lever] has the stuff ready to travel..."

(51) On December 22, 1999, BISHOP emails and advises Anthony Pucci, another East Coast gun dealer, that the "long awaited receivers are going to be hopefully available by mid to end of Jan..."

(52) On December 27, 1999, BISHOP emails and advises Pucci that "the rifles are secured... I have the small remaining bunch of the other receivers that were cleared in by Customs... and I've purchased 20,844 additional receivers that will remain in Canada until such time as the honkeys in Govt say OK..."

(53) On December 27, 1999, BISHOP again emails Pucci and advises: "Please don't tell anyone not even Tom [Byrne] about the receivers... I'm trying to keep the kool in the North Country. It seems that the Canadians think I'm starting a war or something.. can't imagine why.. 20,844 receivers, 892 rifles, 102 Breda Matched Rifles, 67 Beretta Receivers... you think I'm loosing it..."

(54) On December 28, 1999, BISHOP emails Pucci and advises "Tony [Giacobbe] only knows about the rifles that we are stashing until I get my State Dept. export import permit... the rest only Tom [Byrne] knows as he and I have bought the big stash.. I personally, Santa will supply you..."

(55) On December 29, 1999, BISHOP emails Michael Hunt and advises that he purchased the remainder of Century Arms' stock including 865 M1 Garands and 20,844 receivers.

(56) On January 6, 2000, BISHOP wire transferred $45,778.96 to Lever Arms. A handwritten note on the wire indicates that this payment is for the purchase of 865 US Garands with the following persons receiving 216 units each: Tom ([Byrne], Tony P. [Pucci], Tony G. [Giacobbe], and Mel [BISHOP].

(57) On January 17, 2000, BISHOP emails and advises Tom Byrne that he is getting the shipment of "everyones units 9000 lbs. to the Toronto store" which breaks down into 216 units each. BISHOP advises: "We'll start breaking down for 25 unit shipments in a few months or so I'm getting someone there to break down and get shipped..."

(58) On January 19, 2000, FILIPPI filed an entry with U.S. Customs, Reno, on behalf of MBE (Reno) for 528 lbs. of "Machine Parts Misc. U.S.A. Made." The alleged machine parts arrived in 10 boxes and were consigned from Merchandise Mart, Canada.

(59) From January 19 through January 29, 2000, BISHOP emails and advises various customers that receivers are due in February 2000.

(60) On January 31, 2000, BISHOP sends a wire payment from his Bank of America account to Century Arms, Canada in the amount of $50,000. BISHOP's bank entry lists the memo "payment for receivers." According to Canadian law enforcement interviews of Stephen Stanko, Century Arms representative, BISHOP offered to purchase 20,799 receivers from Century for $4.50 each.

**MBE (Reno) Receiver Shipment from Canada Clears U.S. Customs on February 1, 2000:**

(61) On February 1, 2000, Nev-Cal clears a shipment through U.S. Customs, Reno, on behalf of MBE (Reno). The shipment, which arrived from Lever Arms, Canada, is declared as 1000 lbs. of "steel parts/for guns" with a value of $10,000.

(62) On February 2, 2000, Century Arms, Canada, prepared an internal memorandum, which states that MBE purchased the receivers for $4.50 each for a total amount of $93,595.50. The Century memo further states that BISHOP initially gave them a check, but Century requested a wire transfer instead. The memo indicates that $50,000 is to arrive on February 3, 2000 with the balance due in a couple of weeks.

(63) On February 2, 2000 Richard FILIPPI pays Roadway $684.89 from his personal bank account for transportation fees on behalf of MBE (Reno).

(64) On February 5, 2000, 99 M-1 Garand receivers were transferred to MBE from Lever Arms, Canada.

(65) On February 7, 2000, BISHOP charged $17,339.21 on his MBNA credit card payable to Lever Arms, Canada.

(66) On February 12 and 13, 2000, BISHOP emails and advises customers that he is expecting receivers to arrive later in February.

(67) On February 15, 2000, Nev-Cal clears a shipment through U.S. Customs, Reno, on behalf of MBE (Reno). The shipment is declared as 330 lbs. of "steel gun parts" with a value of $17,070. The shipment is consigned from Lever Arms, Canada.

(68) On February 16, 2000, FILIPPI clears a shipment through U.S. Customs, Reno, on behalf of MBE (Reno). The shipment is declared as 700 lbs. of "machine parts misc. U.S.A. made" on the Delta Air Waybill and then later described as "auto parts U.S. made" on the Customs 3461 form filled out by FILIPPI. The Delta Air Waybill is signed by MEITEEN, and the shipment is consigned from Merchandise Mart, Canada.

(69) On February 24, 2000, FILIPPI emails Ken Sturgill, Transair Cargo manager, and advises that he wishes to change his status to part time employment as of April 1, 2000. FILIPPI further advises Sturgill that he will be pursuing "personal business ventures" in Sturgis, South Dakota. BISHOP recently purchased a gun company in Sturgis, South Dakota.

**MBE (Reno) Receiver Shipments from Canada Clear U.S. Customs on February 29, 2000:**

(70) On February 28, 2000, BISHOP charges $20,486.12 on his credit card payable to Lever Arms, Canada.

(71) U.S. Customs, Reno, locates a generic invoice documenting a sale for $10,500 of various gun parts from Lever Arms, Canada, to MBE (Reno). The generic invoice, dated February 19, 2000, does not appear to be a Lever Arms invoice.

15

(72) On February 29, 2000, Nev-Cal clears a shipment through U.S. Customs, Reno, on behalf of MBE (Reno). The shipment is declared to U.S. Customs as 3000 lbs. of "gun parts" with a total value of $20,250. The shipment is consigned from Lever Arms. The invoice presented to U.S. Customs, Reno, appears to have been prepared by FILIPPI. The value of the shipment declared to Reimer Trucking and also to Border Brokers, the Customs Broker in Blaine is $20,250.

(73) On February 29, 2000, FILIPPI clears a second shipment through U.S. Customs, Reno, on behalf of MBE (Reno). The shipment is declared by FILIPPI as 880 lbs. of "industrial machine parts" and "auto/truck parts" of U.S. manufacture with a total value of $1030. The Delta Air Waybill previously described the same shipment as "machine parts misc. U.S.A. made." The February 29, 2000, shipment contains 14 cartons.

(74) On March 1, 2000, BISHOP writes a check payable to MEITEEN in the amount of $20,000 for "metal collection."

**MBE (Reno) Receiver Shipment from Canada Discovered by U.S. Customs on April 13, 2000:**

(75) On March 9, 2000, MBE ordered 5,000 M1 receivers from Century Arms, Canada. Century Arms also transferred 101 M-1 Garand Receivers to MBE (Canada).

(76) On March 18, 2000, 1,900 M-1 Garand receivers were transferred to MBE (Canada) from Century Arms, Canada.

(77) On April 2, 2000, 2,440 M-1 Garand receivers were transferred to MBE from Century Arms. A second transfer occurred on the same date involving 347 M-1 Garand receivers to MBE (Canada) from Lever Arms, Canada.

(78) On April 10, 2000, 3,000 M-1 Garand receivers were transferred to MBE (Canada) from Century Arms, Canada.

(79) On April 14, 2000, U.S. Customs Inspector Roy Palomo, Reno, Nevada contacted U.S. Customs Senior Special Agent (SSA) Lynn Gibson and advised that he had identified a shipment consigned to M.B.E. (Reno) arriving from Canada.

16

(80) According to Inspector Palomo, a query conducted through U.S. Customs computer system of "in bond" shipments to Reno (Port Code 2833) reflected the following summary:

> Delta Air Waybill No. 006-35173235 arrived from Toronto, Canada, on Delta Flight 441 into Atlanta, Hartsfield, on 4-13-00 destined to M.B.E., Reno, NV. The shipper is reflected as MERCHANDISE MART OF CANADA, 639 Queen St., West Toronto, Ontario, M5V 2B7, Canada. The consignee is MBE Inc. (Mel Bishop Enterprises), 220 Piney Creek Rd., Reno, Nevada, Phone: 775-849-1104. The cargo is described as truck and machine parts with an insured value of $204,000. The Air Waybill reflects a total of 15 pieces with a gross weight of 900 lbs. The Delta Air Waybill further reflects "USA goods returning to the U.S."

(81) On April 14, 2000, SSA Gibson contacted SSA Norman Bergstrom, in Atlanta, Georgia, and requested that the above shipment be located. SSA Bergstrom identified the shipment in the Delta Cargo Facility at the Atlanta airport. With the assistance of U.S. Customs Inspectors, SSA Bergstrom conducted a border search of 3 of the 15 cartons in the MBE (Reno) shipment.

(82) The border search revealed that two of the cartons each contained 36 M1 Garand receivers. The third carton inspected contained 20 firearm barrels. The shipper's name and address listed on the Delta Airlines Air Waybill (dated April 13, 2000) was Merchandise Mart, 39 Queen Street West, Toronto, Ontario, Canada. The destination for the shipment was MBE (Reno), 220 Piney Creek Road, Reno, Nevada.

(83) The invoice attached to the Air Waybill purported the contents of the 15 cartons to contain: "Truck and auto parts and shafts...Made in the U.S.A. and U.S.A. Goods Returning...In Bond to Reno, Nevada." The Merchandise Mart invoice also displayed the following information: "Ordered by Mel BISHOP and approved by Ira MEITEEN."

17

(84) The U.S. Customs inspection of the April 13, 2000, shipment determined that the contents of the 15 cartons actually contained firearms receivers (approximately 346) and firearms barrels (approximately 100).

(85) Upon discovery of the firearms, the U.S. Customs Service notified Alcohol, Tobacco, and Firearms (ATF). A firearms and toolmark examiner from the ATF laboratory in Atlanta, Georgia, viewed the contents of the cartons. The examiner reported that the firearm receivers were M-1 Garands and that the accompanying barrels were sized to fit the receivers. A sample of the receiver's serial numbers were recorded as follows: "BMR 3461, BMR 6275, BMR 7943, BMR 4473, BMR 4451, BMR 2705."

(86) U.S. Customs x-rayed the additional 12 cartons. Eight of the cartons contained M1 Garand Receivers and four cartons contained firearm barrels. Neither through the physical inspection nor through the x-rays were any truck or auto parts detected. Prior to resealing the three boxes ATF Special Agent Crues videotaped the boxes and subsequently placed his initials in a discreet location in each box.

(87) On April 14, 2000, Canadian Firearms Officer Michael Press contacted Susan Hoar of the Government of Ontario's Business License and Registry Investigative Unit to check on the business license of Merchandise Mart/King Sol, 639 Queen Street West, Toronto, Canada. Susan Hoar advised that Merchandise Mart/King Sol's business license is for the sale of indoor and outdoor sporting equipment. There is no notation on the business license for the sale of auto or truck equipment.

(88) As part of the firearm smuggling investigation, U.S. Customs and ATF decided to conduct a controlled delivery of the shipment to MBE (Reno). On April 15, 2000, the MBE (Reno) shipment containing 15 cartons of M1 receivers and rifle barrels departed Atlanta "in bond" to Salt Lake City on Delta Flight 705 where the cargo then departed "in bond" on Delta Flight 1948 to Reno, Nevada, its final destination.

(89) On April 15, 2000, ATF and U.S. Customs agents conducted a surveillance of the Delta Cargo Facility, in Reno, Nevada. At approximately 7:45 p.m., Delta

18

1   Cargo, Reno, received the MBE (Reno) shipment of 15 boxes. ATF and U.S. Customs established
2   24-hour surveillance on the Delta Cargo Facility to verify any movement or pickup of the
3   shipment.

4           (90) On April 16, 2000, ATF Special Agent (SA) Krieghbaum contacted the
5   Canadian Firearms Registry (CFR) and spoke with Royal Canadian Mounted Police
6   Corporal Denis Deveau. SA Krieghbaum requested that Deveau check the status of the serial
7   numbers of the six M-1 Garand receivers inspected during the border search of the MBE (Reno)
8   shipment in Atlanta, Georgia. The CFR serial number check revealed that five of the six M1
9   receivers were registered on March 23 and 27, 2000, with MBE (Canada), 639 Queen Street
10  West Toronto, Ontario, Canada. The CFR could not find any registration for the sixth M1
11  receiver.

12          (91) Corporal Deveau advised ATF that investigation of the five registered
13  M1 firearms also revealed the acquisition of an additional 102 receivers by MBE (Canada) during
14  this same period. Corporal Deveau further advised that MBE (Canada) had no export permit for
15  the M1 receivers. The M1 receivers in question should be located at the registered address of 639
16  Queen Street West, Toronto.

17  **ATF and Customs Surveillance of Delta Cargo Facility in Reno on April 17, 2000:**

18          (92) On April 17, 2000, surveillance agents observed FILIPPI arrive and
19  enter the Delta Cargo Facility at approximately 2:00 p.m. On April 17, 2000, FILIPPI was
20  observed departing the facility at approximately 2:10 p.m. FILIPPI was driving a white GMC
21  pickup bearing Nevada license "CAR54". The vehicle was registered to a Debbie Mann, a friend
22  of FILIPPI's.

23          (93) On April 17, 2000, U.S. Customs Inspector Palomo advised SSA
24  Gibson that FILIPPI had arrived at the U.S. Customs Office at approximately 2:15 p.m. and
25  presented a Delta Air Waybill with the number 006-35173235. FILIPPI's shipping invoice and the
26  Air Waybill reflect a total of 15 pieces (cartons) containing "truck and auto parts and shafts." The
    invoice had been "approved by" MEITEEN.

19

(94) On April 17, 2000, FILIPPI returned to the Delta Cargo Facility at approximately 2:19 p.m. At approximately 2:25 p.m., surveillance agents observed FILIPPI and another person, later identified as Billy Smallwood, loading the 15 boxes from the MBE (Reno) shipment into the GMC pickup truck FILIPPI previously arrived in. The boxes matched the description of the 15 boxes which agents in Atlanta had inspected and photographed.

(95) At approximately 3:05 p.m., FILIPPI departed the Delta Facility and was surveilled by agents to 220 Piney Creek Road, Reno, Nevada. This address was the home of BISHOP and the business address of MBE (Reno). FILIPPI arrived at BISHOP's home at approximately 3:35 p.m. FILIPPI unloaded the 15 cartons and placed them inside the garage at BISHOP's residence. The 15 cartons had not cleared U.S. Customs, and no entry (formal or informal) had been filed for these boxes. From the time the boxes were placed into BISHOP's garage, ATF and Customs agents maintained continuous surveillance at 220 Piney Creek Road, Reno, Nevada.

(96) On April 18, 2000 ATF and U.S. Customs agents executed a federal search warrant at BISHOP's residence/business premises. Seized in the search were the following: 750 M-1 Garand receivers, 50 M-1 Garand rifles, 3 machineguns, 100 rifle barrels, computer equipment, shipping boxes, and numerous boxes of business records for MBE (Reno).

(97) On April 18, 2000, U.S. Customs Inspector Roy Palomo and U.S. Customs SA Denise Quiroz conducted an inspection of the Delta Cargo Facility. Palomo and Quiroz inspected and ultimately seized 14 boxes of auto parts which were presented by FILIPPI at the Delta Cargo Facility to represent the "in bond" shipment. Investigation revealed that FILIPPI would "switch out" boxes of M-1 Garand receivers with the auto parts. In addition, FILIPPI would create false labels on Delta's "lot" labeling machine to place on the boxes of auto parts.

(98) U.S. Customs agents also seized an entry document prepared and signed by FILIPPI at the Delta Air Cargo warehouse. This entry, dated April 17, 2000, fraudulently describes the 15 boxes from the MBE (Reno) shipment as "Truck parts-US goods returning."

20

1    (99) On April 18, 2000, further investigation by the CFR, conducted by

2 Corporal Denis Deveau, determined that MBE (Canada) has approximately 14,485 M-1

3 receivers registered to the company. Corporal Deveau advised there has never been an export

4 permit applied for or issued to either MBE (Canada) or Merchandise Mart, Canada..

5    (100) On April 18, 2000, Canadian Detective MacCallum obtained a

6 Canadian Criminal Code Search Warrant from Canadian Provincial Court Judge Lorne Marshall.

7 The search warrant for the premises located at 639 Queen Street West, Toronto, Canada, known

8 as Merchandise Mart and King Sol, and also operating as MEL BISHOP ENTERPRISES.

9    (101) At approximately 5:30 p.m., officers of the Toronto Police, the

10 Ontario Provincial Police, and the Canadian Customs Service executed the Criminal Code Search

11 Warrant at the above address. Canadian law enforcement agents seized 1,000 fully functional M-1

12 Garand rifles. In addition, the agents seized documents that show instructions from BISHOP to

13 MEITEEN to describe rifle barrels as "truck axles" and M1 receivers as "auto parts." Numerous

14 import-export documents were discovered which show various shipments between Merchandise

15 Mart, MBE (Reno), and other foreign gun suppliers.

16    (102) MEITEEN advised the agents other M1 Garand receivers were

17 registered to Merchandise Mart and MBE, but they had not yet taken possession of the firearms.

18 MEITEEN advised that the other firearms were still stored at Century Arms in Montreal, Canada.

19    (103) Canadian search warrants were conducted on Century Arms in

20 Montreal which located in the seizure of in excess of 22,000 M1 Garand receivers.

21    (104) Century Arms advised Canadian law enforcement that the firearms

22 were imported into Canada and then stripped down. According to Century Arms, the receivers are

23 allegedly for domestic sale in Canada and the rest of the gun is then transferred to Century Arms,

24 St. Albans, Vermont, where they are sold as parts kits. Documents were seized to support the

25 transfer of the parts kits to St. Albans. The ATF and U.S. Customs investigation determined that

26 the receivers are not retained in Canada, and the receivers are smuggled into the United States.

All in violation of Title 18, United States Code, Sections 371 and 2.

21

COUNT TWO
TITLE 18, UNITED STATES CODE, SECTIONS 545 and 2
Smuggling Goods Into The United States; Aiding and Abetting

On or about April 13, 2000, in the District of Nevada, and elsewhere, the

defendants,

**MELVIN AARON BISHOP,**

**MBE, INC., and**

**RICHARD D. FILIPPI,**

fraudulently or knowingly did import or bring into the United States and/or conceal and facilitate

the transportation of merchandise imported contrary to law, to wit, fifteen (15) cartons containing

approximately three hundred forty-six (346) M1 Garand receivers and one hundred (100) rifle

barrels, after the importation thereof, the defendants then knowing that said merchandise had been

imported or brought into the United States contrary to law, that is, unlawful importation of

firearms and fraudulent labeling of the shipments as "machine, truck, auto parts and shafts."

All in violation of Title 18, United States Code, Sections 545 and 2.

COUNT THREE
TITLE 18, UNITED STATES CODE, SECTIONS 542 and 2
Entry Of Goods By Means Of False Statements - Multiple Entries;
Aiding and Abetting

On or about the dates specified in Counts Four through Ten, in the District of

Nevada, and elsewhere, the defendants,

**MELVIN AARON BISHOP,**

**MBE, INC., and**

**RICHARD D. FILIPPI,**

willfully and knowingly did enter and introduce, and attempt to enter and introduce, into the

commerce of the United States, imported merchandise, that is, M1 Garand receivers, by means of

false or fraudulent statements or by means of false or fraudulent documents, to wit: submitting

false and/or fraudulent statements, invoices, airway bills, declarations, manifests, transportation

entries, ATF Forms 6's, packing invoices and paper being hereinafter described by "Date of

22

1 Entry", which said documents and statements falsely and/or fraudulently stated that the imported

2 packages/cartons to which said documents were annexed, contained "machine, truck and/or truck

3 parts", whereas, in truth and fact, defendants well knew, that said imported packages/cartons

4 contained firearms, that is, M1 Garand receivers.

5         All in violation of Title 18, United States Code, Sections 542 and 2.

6

7 COUNT FOUR<br>TITLE 18, UNITED STATES CODE, SECTIONS 922(l) and 924(a)(1)(C) and 2<br>Unlawful Importation of Firearms; Aiding and Abetting

8

9         On or about January 21, 1998, in the  District of Nevada, and elsewhere, the

defendants,

10 **MELVIN AARON BISHOP,**

11 **MBE, INC., and**

12 **RICHARD D. FILIPPI,**

13 knowingly and without authorization by the Secretary of the Treasury as provided in 18 U.S.C.

14 Section 925(d), did import and bring into the United States: approximately 2,196 M1 Garand

15 receivers.

16         All in violation of Title 18, United States Code, Sections 922(l) and 924(a)(1)(C)

17 and 2.

18 COUNT FIVE<br>TITLE 18, UNITED STATES CODE, SECTIONS 922(l) and 924(a)(1)(C) and 2<br>Unlawful Importation of Firearms; Aiding and Abetting

19

20         On or about May 5, 1999, in the  District of Nevada, and elsewhere, the defendants,

21 **MELVIN AARON BISHOP,**

22 **MBE, INC., and**

23 **RICHARD D. FILIPPI,**

24 knowingly and without authorization by the Secretary of the Treasury as provided in 18 U.S.C.

25 Section 925(d), did import and bring into the United States: approximately 400 M1 Garand

26 receivers.

1    All in violation of Title 18, United States Code, Sections 922(l) and 924(a)(1)(C)

2  and 2.

3                              COUNT SIX
   TITLE 18, UNITED STATES CODE, SECTIONS 922(l) and 924(a)(1)(C) and 2
4               Unlawful Importation of Firearms; Aiding and Abetting

5    On or about June 29, 1999, in the  District of Nevada, and elsewhere, the

6  defendants,

7                    **MELVIN AARON BISHOP,**

8                        **MBE, INC., and**

9                    **RICHARD D. FILIPPI,**

10  knowingly and without authorization by the Secretary of the Treasury as provided in 18 U.S.C.

11  Section 925(d), did import and bring into the United States: approximately 400 M1 Garand

12  receivers.

13    All in violation of Title 18, United States Code, Sections 922(l) and 924(a)(1)(C)

14  and 2.

15                             COUNT SEVEN
   TITLE 18, UNITED STATES CODE, SECTIONS 922(l) and 924(a)(1)(C) and 2
16              Unlawful Importation of Firearms; Aiding and Abetting

17    On or about February 1, 2000, in the  District of Nevada, and elsewhere, the

18  defendants,

19                    **MELVIN AARON BISHOP,**

20                       **MBE, INC., and**

21                   **RICHARD D. FILIPPI,**

22  knowingly and without authorization by the Secretary of the Treasury as provided in 18 U.S.C.

23  Section 925(d), did import and bring into the United States: approximately 660 M1 Garand

24  receivers.

25    All in violation of Title 18, United States Code, Sections 922(l) and 924(a)(1)(C)

26  and 2.

24

COUNT EIGHT
TITLE 18, UNITED STATES CODE, SECTIONS 922(l) and 924(a)(1)(C) and 2
Unlawful Importation of Firearms; Aiding and Abetting

On or about February 29, 2000, in the  District of Nevada, and elsewhere, the

defendants,

**MELVIN AARON BISHOP,**

**MBE, INC., and**

**RICHARD D. FILIPPI,**

knowingly and without authorization by the Secretary of the Treasury as provided in 18 U.S.C.

Section 925(d), did import and bring into the United States: approximately 2000 M1 Garand

receivers.

All in violation of Title 18, United States Code, Sections 922(l) and 924(a)(1)(C)

and 2.

COUNT NINE
TITLE 18, UNITED STATES CODE, SECTIONS 922(l) and 924(a)(1)(C) and 2
Unlawful Importation of Firearms; Aiding and Abetting

On or about February 29, 2000, in the  District of Nevada, and elsewhere, the

defendants,

**MELVIN AARON BISHOP,**

**MBE, INC., and**

**RICHARD D. FILIPPI,**

knowingly and without authorization by the Secretary of the Treasury as provided in 18 U.S.C.

Section 925(d), did import and bring into the United States: approximately 400 M1 Garand

receivers.

All in violation of Title 18, United States Code, Sections 922(l) and 924(a)(1)(C)

and 2.

/ / /

COUNT TEN
TITLE 18, UNITED STATES CODE, SECTIONS 922(l) and 924(a)(1)(C) and 2
Unlawful Importation of Firearms; Aiding and Abetting

On or about April 13, 2000, in the District of Nevada, and elsewhere, the

defendants,

**MELVIN AARON BISHOP,**

**MBE, INC., and**

**RICHARD D. FILIPPI,**

knowingly and without authorization by the Secretary of the Treasury as provided in 18 U.S.C.

Section 925(d), did import and bring into the United States: approximately 346 M1 Garand

receivers and 100 rifle barrels.

All in violation of Title 18, United States Code, Sections 922(a)(l) and 924(a)(1)(C)

and 2.

COUNT ELEVEN
TITLE 18, UNITED STATES CODE, SECTIONS 548 and 2
Removing Goods in Warehouse; Aiding and Abetting

On or about April 17, 2000, in the District of Nevada, the defendants,

**RICHARD D. FILIPPI,**

**MELVIN AARON BISHOP**

fraudulently did repack or remove fifteen (15) cartons of M1 Garand receivers and rifle barrels

marked as "machine, truck and auto parts and shafts" from the bonded warehouse located at Delta

Cargo, Reno-Tahoe International Airport in Reno, Nevada, in that he presented to the U.S.

Customs Inspector an invoice and Delta Airway Bill No. 00635173235 for the withdrawal of said

merchandise, on which the contents were falsely and/or fraudulently marked as "truck, auto and

machine parts U.S. goods returning."

All in violation of Title 18, United States Code, Sections 548 and 2.

/ / /

COUNT TWELVE

TITLE 18, UNITED STATES CODE, SECTIONS 549 and 2
Removing Goods from Customs Custody: Breaking Seals;
Aiding and Abetting

On or about April 17, 2000, in the District of Nevada, the defendants,

**RICHARD D. FILIPPI,**

**MELVIN AARON BISHOP,**

unlawfully and willfully did break customs seals and remove merchandise from a bonded

warehouse at Delta Cargo, Reno-Tahoe International Airport in Reno, Nevada, that is, fifteen (15)

cartons containing M1 Garand receivers and rifle barrels marked as "machine, truck, auto parts and

shafts."

All in violation of Title 18, United States Code, Sections 549 and 2.

COUNT THIRTEEN

TITLE 18, UNITED STATES CODE, SECTIONS 922(o)(1) AND 924(a)(2)
Unlawful Possession Of A Machinegun

On or about April 18, 2000, in the State and District of Nevada, at 220 Piney

Creek Road, Reno, Nevada,

**MELVIN AARON BISHOP,**

defendant herein, did knowingly and unlawfully possess a machinegun, to-wit: U.S. Carbine,

Model M2, .30 carbine caliber, manufactured by the Inland Manufacturing Division of General

Motors Corporation, serial number 7115125, which was not registered to him in the National

Firearms Registration and Transfer Record;

All in violation of Title 18, United States Code, Sections 922(o)(1) and 924(a)(2).

COUNT FOURTEEN

TITLE 18, UNITED STATES CODE, SECTIONS 922(o)(1) AND 924(a)(2)
Unlawful Possession Of A Machinegun

That on or about April 18, 2000, in the State and District of Nevada, at 220 Piney

Creek Road, Reno, Nevada,

**MELVIN AARON BISHOP,**

27

1    defendant herein, did knowingly and unlawfully possess a machinegun, to-wit:  one Chinese

2    machinegun (AK-47), Type 56, 7.62 x 39mm caliber, serial number 12076852, which was not

3    registered to him in the National Firearms Registration and Transfer Record;

4         All in violation of Title 18, United States Code, Sections 922(o)(1) and 924(a)(2).

5                     COUNT FIFTEEN
      TITLE 18, UNITED STATES CODE, SECTIONS 922(o)(1) AND 924(a)(2)

6                Unlawful Possession Of A Machinegun

7        That on or about April 18, 2000, in the State and District of Nevada, at 220 Piney

8    Creek Road, Reno, Nevada,

9                  **MELVIN AARON BISHOP,**

10   defendant herein, did knowingly and unlawfully possess a machinegun, to-wit:  one U.S.

11   submachinegun, Model M3, .45 ACP caliber, manufactured by the Guide Lamp Division of

12   General Motors Corporation, serial number 180416, which was not registered to him in the

13   National Firearms Registration and Transfer Record;

14        All in violation of Title 18, United States Code, Sections 922(o)(1) and 924(a)(2).

15

16                    COUNT SIXTEEN
        TITLE 18, UNITED STATES CODE, SECTION 982

17                   Criminal Forfeiture

18        Paragraphs 1 through 104 and Counts 1 through 3 and Count 12 of this Indictment
   are realleged and incorporated by reference herein.

19        Upon a conviction of any of the felony offenses charged in Counts 1 through 3

20   and/or Count 12 of this Indictment, defendants

21

22                    **MELVIN AARON BISHOP,**

                  **MBE ENTERPRISES INC., and**

23

24                    **RICHARD D. FILIPPI,**

25   pursuant to Title 18, United States Code, section 982(a)(2)(B) and/or Title 19, United States Code,

26   Section 1595a and Title 28 United States Code, Section 2461, shall forfeit to the United States any

   property constituting or derived from proceeds the defendants obtained directly or indirectly as the

1  result of such violation, and all merchandise introduced or attempted to be introduced into the

2  United States contrary to law, including but not limited to the following:

3         (a) All M1 Garand rifles, receivers, firearm parts, and other merchandise identified

4  in Counts 1-3 and Count 12, in that these items are merchandise introduced or attempted to be

5  introduced into the United States contrary to law and/or are property constituting or derived from

6  proceeds the defendants obtained directly or indirectly as the result of such violations under Title

7  18, United States Code, Sections 371, 542, 545, and 549, as described above.

8         (b) A money judgment against such defendants, jointly and severally, in the sum of

9  $316,200 representing the sum of the proceeds which the defendants obtained directly or indirectly

10  as the result of such violations between December 15, 1997 and February 12, 2000.

11         Pursuant to Title 21, United States Code, Section 853(p), if any of the property

12  described above cannot be located upon the exercise of due diligence; has been transferred or sold

13  to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; or has

14  been commingled with other property which cannot be divided without difficulty; the court shall

15  order the forfeiture of any other property of the defendants up to the value of any property

16  described above.

17

18                      COUNT SEVENTEEN
        TITLE 18, UNITED STATES CODE, SECTION 924(d)(1)
              Criminal Forfeiture of Firearms

19         Counts 4 through 10 and Counts 13 through 15 of this Indictment are realleged and

20  incorporated by reference herein.

21         Upon a conviction of any of the felony offenses charged in Counts 4 through 10 and

22  Counts 13 through 15 of this Indictment, defendants

23

24                  **MELVIN AARON BISHOP,**

25                  **MBE ENTERPRISES INC., and**

26                  **RICHARD D. FILIPPI,**

1  pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code 2461,

2  shall forfeit to the United States any firearms or ammunition involved in or used in the knowing

3  importation or bringing into the United States or any possession thereof of any such firearms, in

4  violation of Title 18, United States Code, Section 922(l), or knowing violation of section 924,

5  including but not limited to the following:

6       (a) Seven hundred and fifty (750) M-1 Garand receivers, fifty (50) M-1 Garand

7  rifles, three (3) machineguns, one hundred (100) rifle barrels seized from the property located at

8  220 Piney Creek Road, Reno, Nevada, on or about April 18, 2000;

9       (b) Any firearms and ammunition identified in Counts 4 through 10 and Counts 13

10  through 15 of this Indictment.

11       Pursuant to Title 21, United States Code, Section 853(p), if any of the property

12  described above cannot be located upon the exercise of due diligence; has been transferred or sold

13  to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; or has

14  been commingled with other property which cannot be divided without difficulty; the court shall

15  order the forfeiture of any other property of the defendants up to the value of any property

16  described above.

17

18       Dated this _30_ day of June, 2001.

19       A TRUE BILL:

20       FOREPERSON

21

22  HOWARD ZLOTNICK
     United States Attorney

23

24  CRAIG S. DENNEY
     Assistant United States Attorney

25

26